**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **THE FLYNN COMPANY**, <br><br> Plaintiff, <br><br> v. <br><br> **STEVEN M. FORTE;** *et al.*, <br><br> Defendants. | Civil Action No. 24-2883 (ZNQ) (JTQ) <br><br> **OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion for Partial Summary Judgment as to Cross Claim (the "Motion") filed by Defendant Grey Parks Briggs, LLC ("GPB"). (ECF No. 35.). Defendant Steven M. Forte ("Forte") filed a Memorandum in Opposition ("Opp'n Br.," ECF No. 37), and GPB filed a Reply Brief (ECF No. 38.)

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **GRANT** the Motion.

**I.      BACKGROUND AND PROCEDURAL HISTORY**

**A.      THE PARTIES**

Plaintiff The Flynn Company ("Plaintiff") is a full service commercial real estate company and provides third-party commercial real estate brokerage and property management services. (ECF No. 1, "Compl." ¶ 4.)

1

Forte is a former employee of Plaintiff and the founder of GPB. (*Id*. ¶¶ 8–9; Moving Br. at 4.) Forte served as the managing and sole member of GPB between June 2021 and February 2023. (Compl. ¶ 11.)

GPB is a limited liability company with its principal place of business in Watchung, New Jersey. (*Id*. ¶ 6.) DPIF III REIT II LLC ("DPIF III"), through its managing agent Dermody Properties, purchased GPB from Forte. (Mov. Br. at 5.) DPIF III holds one-hundred percent membership interest in GPB. (*Id*.)

    **B.**    **PROCEDURAL HISTORY**

On March 14, 2024, Plaintiff filed a Complaint alleging various breaches of loyalty by Forte, as well as unjust enrichment and tortious interference as to Forte and GPB. (Compl. ¶¶ 37–40, 44, 51–57.) On June 19, 2024, Forte filed an Answer asserting a counterclaim for unpaid commissions. (ECF No. 9.) GPB thereafter filed an Answer denying the allegations and asserting crossclaims against Forte for statutory contribution and indemnification. (ECF No. 10.)

On February 25, 2025, GPB requested leave to file an early motion for partial summary judgment as to its crossclaim for indemnification and defense (ECF No. 31), which was granted (ECF 33).

On May 27, 2025, the Court approved, by way of a stipulation by the parties, dismissal of Plaintiff's claim against GPB. (ECF No. 45.) The stipulation has no effect on GPB's crossclaim for contractual indemnification against Forte, who himself is still a party to the ongoing litigation. (ECF No. 45.)

    **C.**    **FORTE'S EMPLOYMENT**

Plaintiff hired Forte as a Real Estate Broker/Salesperson. (Compl. ¶ 8.) Plaintiff expected Forte to "faithfully devote his full business time and best efforts to aid and assist [Plaintiff] in

business transactions involving commercial real estate." (*Id.* ¶ 22.) Plaintiff alleges that Forte owed Plaintiff "a duty to not misappropriate business and business opportunities, a duty to act in Plaintiff's best interests, and a duty generally not to transact business on behalf of a competing entity while employed by [Plaintiff]." (*Id.* ¶ 24.)

### D. GPB'S FORMATION

On June 8, 2021, Forte formed GPB to purchase a 31.84-acre parcel of undeveloped land in Mount Laurel, New Jersey (the "Property"). (Comp. ¶¶ 11–15; Moving Br. at 4.) At the time of the purchase, Forte was the sole member of GPB. (Compl. ¶ 13; Moving Br. at 5.) Plaintiff contends that the purchase of the Property "is the type of project that falls within the scope of services performed by [Plaintiff]" and that Forte had an obligation to disclose the Property to Plaintiff. (Compl. ¶ 15–19.)

### E. GPB'S AMENDED OPERATING AGREEMENT

On February 28, 2023, Forte and DPIF III executed the Amended and Restated Limited Liability Company Operating Agreement of GPB LLC ("the Amended Operating Agreement"), which gave DPIF III a one-hundred percent membership interest in GPB and relieved Forte's ownership interest in its entirety. (Moving Br. at 5.) The Amended Operating Agreement stated that, except for the Amended Agreement of Sale, GPB had no other contracts, liabilities, or obligations. (*Id.* at 6.) The Amended Operating Agreement contained the following indemnification clause:

> Section 2.05 Indemnification by the Forte Member
>
> The Forte Member shall, to the fullest extent permitted by applicable law, indemnify, defend, and hold harmless the Company, its Members, affiliates, employees, officers and directors from and against any and all claims, demands, causes of action, fines, penalties, costs and expenses (including attorneys' fees), losses, or damages of any kind or character, including cost of defense thereof

>    and all costs of investigation in connection therewith, but excluding lost profits, suffered by any of the foregoing arising out of any matter related to the Company from June 8, 2021 through the Effective Date. The indemnifications contained in this Section 2.05 shall survive the termination of this Agreement and the dissolution of the Company.

(*Id.*)

## II.   SUBJECT MATTER JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1332 over claims between parties that are citizens of different states where the matter in controversy exceeds $75,000. The Court has jurisdiction under 28 U.S.C. § 1367 over the remaining claims under state law.

## III.   LEGAL STANDARD

A motion for summary judgment may be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If there is "no genuine dispute over material facts," then courts "will order judgment to be entered in favor of the party deserving judgment in light of the law and undisputed facts*." Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998).

## IV.   DISCUSSION

GPB contends that its defense costs total $35,312.00 and that it has sent Forte "statements requesting reimbursement of attorney's fees and expenses arising out of the litigation." (Moving Br. at 7.) Forte acknowledges receiving the invoices, but notes that the invoices "have been redacted in their entirety, save for the total amount claimed due" and that "none of the invoices provided to Forte contain any description of services, dates, time entries, identities of timekeepers, or billing rates." (Opp'n Br. at 2.) Without this information, Forte argues he cannot "evaluate the basis or reasonableness" of the charges that GPB seeks to have paid immediately and in full. (*Id.*)

Forte nonetheless agrees that he has an obligation to reimburse GPB in accordance with the indemnification clause. (*Id.* at 2.)

Because Forte does not contest his obligation to reimburse GPB, the issue here is whether Forte is required to make immediate payment despite the absence of contractual language specifying a payment schedule.

### A.  INDEMNIFICATION

"Indemnification is available under New Jersey law . . . when a contract explicitly provides for indemnification." *Fireman's Fund Ins, Co. v. 360 Steel Erectors, Inc.*, Civ. No. 16-2782, 2018 WL 1069417, at *4 (D.N.J. Feb. 26, 2018). "[A] party is entitled to indemnification only if he or she is without fault and his or her liability is purely constructive, secondary or vicarious." *Id.*

The determination of whether a contract provides for indemnification is relatively straightforward. *See In re Tarragon Corp.*, Civ. No. 09-10555, 2010 WL 3928496, at *3 (Bankr. D.N.J. Oct. 1, 2010). Under governing New Jersey contract law, a "contract of indemnity is to be interpreted in accordance with the rules governing the construction of contracts generally." *Andre Constr. Assoc., Inc. v. Catel Inc.*, 681 A.2d 121, 123 (N.J. Super. L. Div. 1996). "Where the obligations of the parties are clear and unambiguously set forth in the indemnity agreement, the court should summarily enforce such indemnification provisions." *Id.* (citing *Levison v. Weintraub*, 521 A.2d 909, 910 (N.J. Super. A.D. 1987)). "With regard to express contractual language, New Jersey law directs courts to construe a contractual indemnity provision in the same way it construes any other part of a contract—with the goal of determining the parties' intent." *Lukacs v. Purvi Design LLC*, Civ. No. 21-19599, 2023 WL 6439877, at *4 (D.N.J. Oct. 2, 2023) (citing *Kieffer v. Best Buy*, 14 A.3d 737, 743 (2011)).

Here, the language of the Amended Operating Agreement is clear and unambiguous. Forte is to "indemnify" and "defend" GPB and its members from and against all claims arising out of any matter related to GPB during the course of his tenure with GPB. The Complaint alleges facts that arise out of and relate to activities undertaken by Forte in June 2021—actions that occurred within the relevant time period outlined in the Amended Operating Agreement. Accordingly, Forte, as soon as practicable, must reimburse GPB for all defense costs and expenses incurred to date and pay any future defense costs and expenses.

V. **CONCLUSION**

For the reasons stated above, the Court will **GRANT** the Motion for Partial Summary Judgment. Forte and GPB are to meet and confer by December 1, 2025 regarding the information Forte needs to assess costs and expenses. An appropriate Order will follow.

Date: October 31, 2025

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**